

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JAN 1 4 2005

CLERK, U.S. DISTRICT COURT
by _____

| | |
|---|---|
| RUTH R. LENTZ, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CITADEL SECURITY SOFTWARE INC., STEVEN B. SOLOMON, and RICHARD CONNELLY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO.

**3-05CV  0100D**

CLASS ACTION COMPLAINT

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff, Ruth R. Lentz ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint against defendants, alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Citadel Security Software Inc. ("Citadel Security" or the "Company") securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

-1-

**NATURE OF THE ACTION**

1.      This is a federal class action on behalf of purchasers of the securities of Citadel Security between February 12, 2004 and December 16, 2004, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

**JURISDICTION AND VENUE**

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District. Additionally, the Company maintains a principal executive office in this Judicial District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## **PARTIES**

6.     Plaintiff, Ruth R. Lentz, as set forth in the accompanying certification, incorporated by reference herein, purchased Citadel Security securities at artificially inflated prices during the Class Period and has been damaged thereby.

7.     Defendant Citadel Security is a Delaware corporation and maintains its principal executive offices at Two Lincoln Centre, 5420 LBJ Freeway, Dallas, Texas 75231.

8.     Defendant Steven B. Solomon ("Solomon") was, at all relevant times, the Company's President, Chief Executive Officer and Director.

9.     Defendant Richard Connelly ("Connelly") was, at all relevant times, the Company's Chief Financial Officer.

10.     Defendants Solomon and Connelly are collectively referred to hereinafter as the "Individual Defendants."  During the Class Period, each of the Individual Defendants, as senior executive officers and/or directors of Citadel Security were privy to non-public information concerning its business, finances, products, markets and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

11.     Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends,

-3-

financial statements, markets and present and future business prospects *via* access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

12.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of Citadel Security, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

13.     As officers and controlling persons of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the Exchange Act, and was traded on the NASDAQ and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any

previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

14.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Citadel Security, each of the Individual Defendants had access to the adverse undisclosed information about Citadel Security financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Citadel Security and its business issued or adopted by the Company materially false and misleading.

15.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

16.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Citadel Security securities by

disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Citadel Security business, operations, management and the intrinsic value of Citadel Security securities; and (ii) caused Plaintiff and other members of the Class to purchase Citadel Security securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

17.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of Citadel Security between February 12, 2004 and December 16, 2004, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

18.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Citadel Security's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Citadel Security or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

19.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

-6-

20.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

21.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)  whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)  whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Citadel Security; and

(c)  to what extent the members of the Class have sustained damages and the proper measure of damages.

22.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

-7-

23.     Citadel Security develops and markets computer security and privacy software. Its information technology (IT) security computer software products include security and management solutions for networks and personal workstations designed to secure and manage personal computers and local area networks.  These products enable companies to remediate the security vulnerabilities on IT networks that occur through software applications, unauthorized access and misconfigurations of systems.  With the Company's products, companies are able to manage their computing environments and enforce security policies from a single point of control across Windows, Linux, and UNIX platforms.  The Company has three principal products: Hercules, WinShield Secure PC and NetOFF.

## Materially False And Misleading
## Statements Issued During The Class Period

24.     The Class Period commences on February 12, 2004.  At that time, the Company issued the following projection for fiscal year 2004:

> The company expects to report revenues for fiscal 2004 of between $18,500,000 and $21,000,000 and expects pre-tax operating income between $900,000 and $1,700,000, depending upon the level of new investment made on infrastructure. The company expects to hire an additional 50 to 60 employees during 2004 in commercial sales, government sales, marketing, business development and engineering to support the projected sales growth and expansion of the Hercules product line. The company does not expect to provide quarterly guidance as revenues are still expected to be concentrated in several large transactions and, therefore, the timing of the revenue could be difficult to forecast on a quarterly basis. To support market demand the hiring of new employees is expected to precede the timing of orders; therefore, it is likely that expenses will grow faster in the first half of the year than in the second half of 2004.

25.     Also on February 12, 2004, Citadel Security announced that it signed a commitment letter securing a total of $3.5 million in debt financing from Comerica Bank's Technology and Life

-8-

Sciences Division. The financing included a term loan and a receivables-based revolving credit facility. The interest rate would be based upon a very favorable structured spread. The debt financing would be in addition to the recently announced private placement of $15 million provided by Satellite Strategic Finance Associates, LLC, a private investment fund. Commenting on this, defendant Solomon stated:

> "We believe the recent initiatives we have taken to strengthen our balance sheet have positioned us for strong growth in 2004[.] . . . This financing, in addition to our recently completed $15 million private placement, will allow us to make key investments in sales and marketing and engineering to build upon our position as a leader in automated vulnerability remediation."

26.     On May 6, 2004, Citadel Security announced financial results for its first quarter ended March 31, 2004. First quarter 2004 revenue was $2,322,000, an increase of 748% versus $274,000 for the first quarter of 2003. The increase was principally a result of higher revenue from licensing of Hercules®, Citadel's Automated Vulnerability Remediation technology and a follow on order from the Department of Veteran Affairs. After giving effect for the preferred stock dividends, the net loss to common shareholders for the first quarter of 2004 was $1,721,000 or $0.06 loss per share versus the net loss to common shareholders of $1,238,000 or $0.07 loss per share for the first quarter of 2003. The Company closed a $15 million round of financing from Satellite Strategic Finance Associates, LLC, a private investment fund in February 2004 through the issuance of 15,000 shares of Series A Convertible Preferred Stock with a dividend rate of 5% payable in cash or 6% if payable in common stock. The Company ended the first quarter with nearly $14 million in cash and cash equivalents, current accounts receivable of $4 million, net working capital of nearly $13 million and stockholders' equity of nearly $17 million.

27.     Commenting on this, defendant Solomon stated:

"Our government customers continue to show confidence in our Hercules AVR technology as the Department of Veteran Affairs expanded their enterprise license to cover their worldwide network[.] . . . We have accomplished a lot in a short period of time. During the first quarter, we continued to build our infrastructure to support commercial initiatives in the second half of the year. We continue to make inroads into the federal government space and see strong demand from the commercial sector for vulnerability management solutions.

The increase in Internet worms, such as Sasser, creates the need for solutions like Hercules that quickly fix vulnerabilities these types of cyber threats exploit. We're excited about the upcoming delivery of new patent-pending technology which will extend our ability to address additional security issues[.] . . . Hercules version 2.2, which we launched last quarter, has been very well received. However, the upcoming release represents the next generation vulnerability management solution that coupled with our new technology we will further extend our leadership position and provide a catalyst for future revenue.

\*\*\*

The financing strengthens our balance sheet so that we can continue to make investments in advancing our AVR technology to build full lifecycle vulnerability management products with a broad range of features, functions and platform support[.] . . . Hercules became the first AVR product that passed Common Criteria EAL3 level testing in March 2004, further demonstrating our commitment to quality and excellence in the design of security software solutions that reduce time and costs for our government and commercial customers. We believe this will further improve our competitive position in the market."

28.    Additionally, the Company reiterated its fiscal 2004 guidance as follows:

The Company reiterated its expectation to report 2004 revenues of between $18,500,000 and $21,000,000 and expects pre-tax operating income between $700,000 and $1,000,000, depending upon the level of new investment made on infrastructure. The company expects to have approximately 150 employees by year end 2004 and be fully staffed in all disciplines going into 2005. The company does not expect to provide quarterly guidance as revenues are still expected to be concentrated in several large transactions and, therefore, the timing of the revenue could be difficult to forecast on a quarterly basis. To

-10-

support market demand the hiring of new employees has and is expected to continue to precede the timing of orders; therefore, it is likely that expenses will grow faster in the first half of the year than in the second half of 2004.

29.    On July 7, 2004, the Company issued a press release with the headline: "Citadel Security Software Expects 150% Increase in Sequential Quarterly Revenue[;] Company Expects to Report Second Quarter 2004 Revenue of Approximately $3.4 Million and Reiterates 2004 Full-year Revenue Guidance." Therein the Company stated:

> Citadel Security Software Inc. (NASDAQ:CDSS), a leader in full life cycle vulnerability management and policy enforcement solutions through its automated vulnerability remediation (AVR) technology, today announced that it expects revenue of approximately $3.4 million for its second quarter ended June 30, 2004. This is an increase of approximately 150 percent over revenue reported for the first quarter of 2004. Demand for vulnerability management solutions in the government sector and commercial enterprise market is expected to place the full-year 2004 revenue in a range of $18.5 million to $21 million, consistent with previous guidance.

30.    On August 5, 2004, Citadel Security announced financial results for its second quarter ended June 30, 2004. Revenue for the second quarter of 2004 increased 342 percent to $3,444,000, versus $779,000 for the second quarter of 2003. Revenue for the six months ended June 30, 2004 was $5,766,000, representing a 448 percent increase over the revenue for the six months ended June 30, 2003 of $1,053,000. Additionally, the Company stated:

> GAAP Results: The net loss to common shareholders for the quarter ended June 30, 2004 was $2,064,000, or $0.07 loss per share versus a net loss to common shareholders of $1,377,000, or $0.06 loss per share for the quarter ended June 30, 2003. The net loss to common shareholders for the six months ended June 30, 2004 was $3,785,000 or $0.13 loss per share, versus a net loss of $2,614,000 or $0.13 loss per share, for the six months ended June 30, 2003. The increase in the loss in the current periods versus the same periods last year is due to the planned growth in technical, sales and marketing personnel and the supporting infrastructure to address the burgeoning need for enterprise wide network security including full life cycle vulnerability

-11-

management solutions as in Citadel's Hercules and ConnectGuard software solutions.

Non GAAP Results: Non-GAAP pro forma results and related reconciliation, as outlined in the attached financial tables, exclude the effects of preferred dividends and the accretion of the preferred stock beneficial conversion feature. The pro forma loss for the second quarter of 2004 was $1.8 million, a $0.06 loss per share, versus $1.4 million, a $0.06 loss per share for the 2003 second quarter. For the six months ended June 30, 2004 the pro forma loss was $3.4 million, a $0.12 loss per share which compares to the pro forma loss of $2.6 million or $0.13 loss per share for the six months ended June 30, 2003.

Balance Sheet: At June 30, 2004 the Company had cash and cash equivalents of $11.5 million, current receivables of $3.3 million, a working capital position of $11 million and stockholders' equity of $15 million. In addition, the Company has $2.7 million of borrowing capacity under its recently secured bank lines of credit. We believe the balance sheet strength positions the Company for growth in the second half of 2004. During the second quarter of 2004, deferred revenue and accounts receivable were reduced by approximately $1.7 million due to a system integrator's cancellation of an order because the integrator and the government agency had not concluded contract negotiations and the eventual terms of the integrator's order from the government agency would most likely be different than the terms originally proposed in December 2003.

31.     Commenting on these results, defendant Solomon stated:

"We're excited about the growing market understanding and subsequent focus on full life cycle vulnerability management as one of the most proactive ways to reduce or mitigate the high cost of network security vulnerabilities[.] . . . The public sector continues to contribute significantly to Citadel's revenue but we are seeing the commercial sector realize that its current practices, utilizing manual methods and point tools, are not enough to eliminate vulnerabilities from their networks. The Company believes that its recent record order received from a large global communications and services company is a positive indication that there is an increasing demand for full life cycle vulnerability management solutions such as Hercules. We expect to see an increase in the number and size of proposals that we are directly asked to participate in from both corporations and government agencies. We have also experienced

-12-

increased activity from our strategic partners, which we believe will help us grow rapidly in 2005."

32.    Lastly, the Company again reaffirmed its fiscal 2004 guidance as follows:

The Company reiterates its expectation to report full-year 2004 revenue of between $18.5 million and $21 million. The Company expects to generate pre-tax operating income for the second half of its fiscal year of $1.0 million to $2.0 million. Gross margins are expected to improve during the second half of the Company's fiscal year versus the first-half results.

The Company's results are expected to be impacted by increased investments in key sales and marketing personnel, trade show and marketing activities, with increased marketing initiatives targeted at corporate customers and higher investments in increased research and development activities surrounding the next release of Hercules. Due to the improvements to the development process, which we believe will enhance product delivery and functionality, the Company expects to capitalize less of its software development costs than previously anticipated. Citadel also created a Professional Services organization to support its Enterprise Customers and Partner relationships to provide training, implementation, and network security architecture services. The Company expects to have approximately 135 to 150 employees by year end 2004. We expect capital expenditures for full year 2004 will approximate $5 million, consisting primarily of information technology assets to support our infrastructure and customers. The Company does not anticipate that it will provide quarterly guidance as revenues are still expected to be concentrated in several large transactions and, therefore, the timing of the revenue may be difficult to forecast on a quarterly basis.

33.    On October 7, 2004, Citadel Security announced preliminary results for its third quarter ended September 30, 2004. The Company expected to report record revenue for the third quarter of between $7.4 million to $7.8 million and its first quarterly net income. Commenting on this, defendant Solomon stated:

"This quarter was a huge success for our customers and employees as we were awarded significant new business in both the public and commercial sectors[.] . . . .Some of the deals we won included a $1.7 million commercial enterprise license with a global communications

-13-

and services company, reflecting growing interest in Hercules(R) in the commercial sector, and an $8.6 million enterprise license and services subcontract for the Department of Defense.

The third quarter's results, and our new business pipeline, reflect the growing recognition by businesses and government agencies for the need to adopt a proactive approach for vulnerability management. Blind reliance on reactive measures is no longer sufficient. We are aggressively addressing this market opportunity by broadening our product offerings with the new 3.5 release of Hercules AVR, the addition of ConnectGuard for endpoint security and AssetGuard for full device inventory capability. This suite of products offers our customers a cradle-to-grave vulnerability management solution unsurpassed in the market today. I am very proud of our employees and their continuing commitment to the company's success as demonstrated by our third quarter results."

34.    On November 1, 2004, Citadel Security announced financial results for its third quarter and nine months ended September 30, 2004. Revenue for the third quarter of 2004 increased 965% to $7,773,000, versus $730,000 for the third quarter of 2003. Revenue for the nine months ended September 30, 2004 was $13,539,000, representing a 659% increase over the $1,783,000 of revenue for the nine months ended September 30, 2003. Additionally, the Company stated:

GAAP Results: Net income to common shareholders for the quarter ended September 30, 2004 was $747,000, or $0.02 earnings per diluted share to common shareholders, versus a net loss to common shareholders of $2,439,000, or $0.11 loss per share to common shareholders for the quarter ended September 30, 2003. The net loss to common shareholders for the nine months ended September 30, 2004 was $3,038,000 or $0.10 loss per share to common shareholders versus a net loss of $5,053,000 or $0.24 loss per share to common shareholders for the nine months ended September 30, 2003. The increase in revenue for the quarter and nine months ended September 30, 2004 over similar periods in 2003 was driven by the growing need for enterprise wide network security, including full life cycle vulnerability management solutions such as Citadel's Hercules, ConnectGuard and AssetGuard suite of software solutions.

Non GAAP Results:  Non-GAAP pro forma results and related reconciliation, as outlined in the attached financial tables, exclude the effects of preferred dividends and the accretion of the preferred stock

-14-

beneficial conversion feature. The pro forma net income for the third quarter of 2004 was $996,000 or $0.03 per diluted share, versus a loss of $2.4 million, or an $0.11 loss per share for the 2003 third quarter. For the nine months ended September 30, 2004 the pro forma loss was $2.4 million, or an $0.08 loss per share, which compares to the pro forma loss of $5.1 million, or a $0.24 loss per share for the nine months ended September 30, 2003.

Balance Sheet: At September 30, 2004 the Company had cash and cash equivalents of $9.6 million, current receivables of $7.6 million, a working capital position of $9.2 million and stockholders' equity of $16.1 million. The Company believes the strength of its balance sheet positions it for continued growth during the fourth quarter of 2004 and into 2005.

35.    Commenting on these results, defendant Solomon stated:

" We had an outstanding quarter highlighted in part by our contract win for the Department of Defense and a commercial enterprise license with a global telecommunication and services company. The public sector continues to place its confidence in Citadel for providing enterprise vulnerability management solutions[.] . . . We expect the continued momentum we've seen in the public sector to carry over into the commercial sector. We are aggressively addressing this market opportunity by broadening our product offerings with the new 3.5 release of Hercules AVR, the addition of ConnectGuard for endpoint security and AssetGuard for full device inventory capability."

36.    Again, the Company reaffirmed its guidance for fiscal year 2004 as follows:

Business Outlook: The Company reiterated its expectation to report full-year 2004 revenue of between $18.5 million and $21 million. The Company expects to generate net income for the second half of its fiscal year of $1.0 million to $2.0 million.

The Company remains committed to increased investment in key sales and marketing personnel, trade shows and strategic marketing activities targeted at growing its corporate customer base in the commercial sector and building on the gains made in the public space. The Company will continue to invest in research and development activities that will dramatically improve feature sets and the overall functionality of future releases of its Hercules products. Recent improvements made in the development process continue to

-15-

enhance both the delivery and functionality of the products causing a normalization of capitalized software development costs throughout the remainder of the year 2004. Citadel's product offerings, along with training and educational opportunities, will better position the Company to grow its customer base and capitalize on increased revenue opportunities. In mid fourth quarter, Citadel will move into its new corporate facilities at II Lincoln Center in Dallas, which will afford improved process and structure for the planned 135 to 150 employees by year end. The Company expects to provide guidance for fiscal 2005 when it announces its fourth quarter and year end results in early February.

37.     The statements contained in ¶¶ 24-36 were materially false and misleading when made because failed to disclose or indicate the following: (1) that customer demand in the commercial portion of the Company's business was slowing; (2) that the much touted, sizable pipeline of potential contracts failed to materialize due to poor management execution; (3) that as a consequence of the above the Company's growth was lagging; and (4) therefore, the defendants statements about the Company were lacking in any reasonable basis when made.

## The Truth Begins to Emerge

38.     On December 17, 2004, Citadel Security provided a financial update for its year-ended December 31, 2004. More specifically, the Company stated:

> Based upon preliminary estimates, Citadel now expects its revenue for the full year 2004 to be between $15.2 million and $16.0 million, compared to previous guidance of full-year revenue of $18.5 to $21 million. As a result, the Company will not meet its previously released net income guidance for the second half of 2004 which was for net income of $1.0 million to $2.0 million. The Company expects to end 2004 with approximately $4.9 million of deferred revenues, most of which will be earned in 2005.

-16-

"While we are disappointed that it appears unlikely that we will be able to meet our targets, based on discussions with potential customers, we believe that we are positioned well going into 2005," said Steven B. Solomon, Citadel's chairman, CEO and president. "Our revenue today comes primarily from large transactions, which, if delayed, can negatively impact our quarter-to-quarter results. In this case, several large deals that we expected to occur in 2004 with both government and commercial sector customers now appear likely to be delayed until the first half of 2005. We are pleased that our results thus far in 2004 represent a substantial improvement over 2003, and we look forward to continued strong growth in 2005. As we are finalizing our business plans for 2005, we believe that our pipeline is strong and we expect strong growth in both revenue and earnings in the upcoming year."

Both government and commercial segments are positioned to deliver profitable growth in 2005 and beyond. Mr. Solomon stated, "This past year, we recorded some of our largest sales ever, rolled out several exciting new products, completed a financing with a leading investment firm, listed our stock on the Nasdaq SmallCap Market, hired many top-quality employees, and moved into our state-of-the-art facility. We believe that we are positioned well for the future."

The Company anticipates that it will issue 2005 guidance when it releases its preliminary 2004 year-end results in early 2005.

39.     News of this shocked the market. Shares of Citadel Security fell $1.80 per share, or 41.96 percent, to close at $2.49 per share on unusually high trading volume.

## Post Class Period Statements

40.     On December 31, 2004, the Company filed a current report on Form 8-K with SEC wherein it stated:

On April 15, 2004 Citadel Security Software Inc. (Citadel) completed a Loan and Security Agreement (the Original Agreement) with Comerica Bank (Comerica), securing credit lines amounting to a total of $3,500,000. Of this amount, $750,000 was a revolving line of credit which if used would be secured by accounts receivable defined in the loan agreement. The remaining $2,750,000 credit line was available in two tranches to fund capital equipment expenditures through December 31, 2004. These loans would be secured by the

-17-

capital equipment acquired with the proceeds of the borrowings. Through December 30, 2004 the Company has used the full amount of the $2,750,000 credit line to fund capital expenditures during 2004. The revolving line of credit remained unused and on December 30, 2004, Citadel and Comerica entered into a First Amendment to Loan and Security Agreement (the Amendment), pursuant to which Comerica and Citadel agreed to amend the the Original Agreement dated as of April 15, 2004 between Citadel and Comerica, to convert $750,000 of available indebtedness under the Original Agreement from revolving indebtedness to equipment financing. Comerica has advanced this $750,000 to Citadel.

As of December 28, 2004, Citadel received a waiver from Comerica related to Citadel's non-compliance with the Minimum Fixed Charge Ratio covenant set forth in the Original Agreement. Under the terms of the Original Agreement, such non-compliance would be deemed an event of default and could result in an acceleration of all of Citadel's indebtedness thereunder. As of December 30, 2004, $3,330,584 was outstanding in principal and interest under the Loan Agreement.

## UNDISCLOSED ADVERSE FACTS

41.    The market for Citadel Security's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Citadel Security's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Citadel Security securities relying upon the integrity of the market price of Citadel Security's securities and market information relating to Citadel Security, and have been damaged thereby.

42.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Citadel Security's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set

-18-

forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

43.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Citadel Security's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Citadel Security and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

44.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Citadel Security, their control over, and/or receipt

and/or modification of Citadel Security allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Citadel Security, participated in the fraudulent scheme alleged herein.

45.      Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public.  The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

46.      Additionally, during the Class Period, defendants and insiders began to sell a total of 754,500 shares at a time when the defendants knew that the Company's financial results would not meet the street's estimates, and Citadel Security's guidance would have to be revised, as detailed below:

| NAME | DATE | SHARES SOLD | PROCEEDS |
|---|---|---|---|
| Steven B. Solomon | 02/24/2004<br>02/25/2004<br>04/02/2004<br>11/15/2004<br>11/16/2004<br>12/06/2004 | 70,000 @ $4.745<br>180,000 @ $4.631<br>44,000 @ $4.443<br>177,600 @ $4.152<br>178,400 @ $4.166<br>50,000 @ $4.572<br>*Total Shares Sold:*<br>*700,000* | $332,150.00<br>$833,580.00<br>$195,492.00<br>$737,395.20<br>$743,214.40<br>$228,600.00<br>*Total Proceeds:*<br>*$3,070,431.60* |

| Richard Connelly | 02/24/2004 | 7,500 @ $4.765 | $35,737.50 |
| | 02/25/2004 | 11,000 @ $4.610 | $50,710.00 |
| | 04/01/2004 | 4,000 @ $4.390 | $17,560.00 |
| | 05/04/2004 | 500 @ $4.250 | $2,125.00 |
| | 05/05/2004 | 3,500 @ $4.151 | $14,528.50 |
| | 11/15/2004 | 17,500 @ $4.152 | $72,660.00 |
| | 11/16/2004 | 6,500 @ $4.164 | $27,066.00 |
| | 12/06/2004 | 4,000 @ $4.572 | $18,288.00 |
| | | *Total Shares Sold: 54,500* | *Total Proceeds: $238,675.00* |
| | | *Total Shares Sold: 754,500* | *Total Proceeds: $3,309,106.60* |

47.     In addition to the above-referenced insider selling, defendants were able to complete and establish a $3.5 million credit facility.

### Applicability Of Presumption Of Reliance:
### Fraud-On-The-Market Doctrine

48.     At all relevant times, the market for Citadel Security securities was an efficient market for the following reasons, among others:

(a)   Citadel Security stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)   As a regulated issuer, Citadel Security filed periodic public reports with the SEC and the NASDAQ;

(c)   Citadel Security regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

-21-

(d)  Citadel Security was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

49.    As a result of the foregoing, the market for Citadel Security securities promptly digested current information regarding Citadel Security from all publicly-available sources and reflected such information in Citadel Security stock price. Under these circumstances, all purchasers of Citadel Security securities during the Class Period suffered similar injury through their purchase of Citadel Security securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

50.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Citadel Security who knew that those statements were false when made.

## FIRST CLAIM
### Violation Of Section 10(b) Of
### The Exchange Act Against And Rule 10b-5
### Promulgated Thereunder Against All Defendants

51.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52.     During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Citadel Security securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

53.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Citadel Security securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

54.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Citadel Security as specified herein.

-23-

55.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Citadel Security value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Citadel Security and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Citadel Security securities during the Class Period.

56.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

-24-

57.    The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Citadel Security operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

58.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Citadel Security securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Citadel Security publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired Citadel Security securities during the Class Period at artificially high prices and were damaged thereby.

59.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Citadel

-25-

Security was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Citadel Security securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

60.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

61.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation Of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

62.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

63.    The Individual Defendants acted as controlling persons of Citadel Security within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contend are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were

-26-

issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

65.     As set forth  above, Citadel Security and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b)  Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)  Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 14, 2005.

Mark W. Romney
State Bar No. 17225750
Robert E. Jenkins
State Bar No. 24036842
**VIAL, HAMILTON, KOCH & KNOX, LLP**
1700 Pacific Avenue, Suite 2800
Dallas, TX 75201
Telephone: 214/712-4400
214/712-4402 (fax)


**SCHIFFRIN & BARROWAY, LLP**
Marc A. Topaz
Richard A. Maniskas
Three Bala Plaza East
Suite 400
Bala Cynwyd, PA 19004
(610) 667-7706

**Attorneys for Plaintiff**

-28-

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM )

## I. (a) PLAINTIFFS
Ruth R. Lent

3 - 05 CV   00100D

**DEFENDANTS**
Citadel Security Software, Inc., Steven B. Solomon, Richard Connelly

(b) County of Residence of First Listed   Greene County, OH
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Dallas County, TX
(IN U.S PLAINTIFF CASES ONLY)
NOTE.  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

RECEIVED
JAN 14 2005
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

(c) Attorney's (Firm Name, Address, and Telephone Number)
Mark W. Romney, Vial Hamilton, Koch & Knox, LLP, 1700 Pacific Ave., Suite 2800, Dallas, TX 214-712-4400

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government
      Plaintiff

X 3  Federal Question
      (U S  Government Not a Party)

☐ 2  U.S. Government
      Defendant

☐ 4  Diversity
      (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 362 Personal Injury - Med | of Property 21 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | ☐ 365 Personal Injury - Product | ☐ 630 Liquor Laws | **PROPERTY** | ☐ 460 Deportation |
| & Enforcement of | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury | ☐ 650 Airline Regs | ☐ 830 Patent | Corrupt |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl  Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | x 850 Securities/Commodities/ |
| of Veteran's | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt  Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product | ☐ 730 Labor/Mgmt Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodati | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer  w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer  w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

X 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S  Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
15 U.S.C. §§ 78i(b) and 78t(a); 17 C.F.R. §240.10b-5
Brief description of cause:
Class action on behalf of purchasers of the securities of Citadel Security between February 12, 2004 and December 16, 2004

## VII. REQUESTED IN COMPLAINT:
X  CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   X Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)   JUDGE _____   DOCKET NUMBER _____

DATE
January 14, 2005

SIGNATURE OF ATTORNEY OF RECORD
_Mark W Romney_

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____