UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

-------------------------------------------------------------x

| | | |
|---|---|---|
| RUTH LENTZ, Individually and On Behalf of All Others Similarly Situated, | : : | Civ. Action No. 3:05-CV-0100-D (Consolidated with |
| | : | Civil Action No. 3:05-CV-0142-D |
| Plaintiff, | : | Civil Action No. 3:05-CV-0157-D |
| vs. | : | Civil Action No. 3:05-CV-0184-D |
| | : | Civil Action No. 3:05-CV-0203-D |
| CITADEL SECURITY SOFTWARE, INC., | : | Civil Action No. 3:05-CV-0297-D |
| et al., | : | and |
| | : | Civil Action No. 3:05-CV-0488-D) |
| Defendants. | : | |
| | : | |

-------------------------------------------------------------x

| | | |
|---|---|---|
| HANS J. BAIER, derivatively on behalf of Nominal Defendant, CITADEL SECURITY SOFTWARE, INC., | : : : | |
| | : | |
| Plaintiff, | : | |
| vs. | : | |
| | : | |
| STEVEN B. SOLOMON, RICHARD CONNELLY, CHRIS A. ECONOMOU, | : : | Civil Action No 3:05-CV-0846-D |
| | : | |
| Defendants, | : | |
| | : | |
| And | : | |
| | : | |
| CITADEL SECURITY SOFTWARE, INC. | : | |
| | : | |
| Nominal Defendant | : | |

-------------------------------------------------------------x

**PLAINTIFFS' COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF
AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ............................................................. 1

II.   ARGUMENT ....................................................................................... 2

   A.   Plaintiffs' Counsel is Entitled to an Award
       of Attorneys' Fees and Reimbursement of Expenses ........................ 2

   B.   The Standard Governing the Award of Attorneys' Fees .................... 3

   C.   The Requested Fee is Fair and Reasonable under the *Johnson* Factors ......... 5

      1.   The Time and Labor Required ........................................................ 5

      2.   The Novelty and Difficulty of the Issues ..................................... 8

      3.   The Skill Requisite to Perform the Legal Service Properly ...................... 10

      4.   The Preclusion of Other Employment .......................................... 10

      5.   The Customary Fee ....................................................................... 11

      6.   Whether the Fee Is Fixed or Contingent ...................................... 13

      7.   Time Limitations Imposed by the Client or Circumstances. ...................... 14

      8.   The Amount Involved and Results Achieved ............................... 14

      9.   The Experience, Reputation, and Ability of the Attorneys ...................... 16

      10.  The Undesirability of the Case .................................................... 17

      11.  Nature and Length of Relationship With the Client ...................... 17

      12.  Awards in Similar Cases .............................................................. 18

   D.   Public Policy Considerations .......................................................... 18

   E.   No Objections by Class Members or Current Shareholders
       Underscores the Reasonableness of the Fee Request ........................ 19

   F.   Plaintiffs' Counsel's Expenses Were Reasonably Incurred and  Necessary to
       the Prosecution of this Action and Should be Reimbursed ...................... 20

CONCLUSION ......................................................................................... 20

## TABLE OF AUTHORITIES

### Statutes and Rules

Fed. R. Civ. P.12(b)(6) ....................................................................................... 8

### Cases

*Basic, Inc. v. Levinson*,
    485 U.S.224 (1988) ...................................................................................... 18

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
    472 U.S. 299 (1985) ....................................................................................... 3

*Blatt v. Merrill Lynch, Peirce, Fenner & Smith, Inc.*,
    No. 94-2348 (D.N.J. Mar. 4, 1998) ............................................................. 12

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) .................................................................................... 2-3

*Branca v. Paymentech, Inc.*,
    No. 97-cv-2507-l (N.D. Tex. Jan. 4, 2001) ................................................. 11

*Chatelain v. Prudential Bache-Secs. Inc.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) .............................................................. 18

*Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ........................................................................... 8

*Di Giamoco v. Plains All Am. Pipeline*,
    Case Nos. H-99-4137, H-99-4212,
    2001 U.S. Dist. LEXIS 25532 (S.D. Tex. 2001) .................................... 16, 17

*In re Airline Ticket Comm'n Antitrust Litig.*,
    953 F. Supp. 280 (D. Minn. 1997) ............................................................... 12

*In re American Bank Note Holographics*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ........................................................... 4

*In re Ancor Communications, Inc. Sec. Litig.*,
    No.97-cv-1696 (D. Minn. Feb. 5, 1999) ...................................................... 12

*In re Baesa Sec. Litig.*,
  No. 96-cv-7435 (S.D.N.Y. Oct. 7, 1998)....................................................................12

*In re Blech Sec. Litig.*,
  94 CIV. 7696(RWS), 2000 WL 661680 (S.D.N.Y. May 19, 2000)............................15

*In re Copley Pharmaceutical*, *Inc. Sec. Litig.*,
  No. 94-11897-WGY (D. Mass. Feb. 8, 1996) ..............................................................13

*In re Engineering Animation Sec. Litig.*,
  203 F.R.D. 417 at 423 (S.D. Iowa 2001) ................................................................11-12

*In re Equity Funding Corp. Sec. Litig.*,
  420 F. Supp. 610 (D. Colo. 1976) ................................................................................10

*In re General Instrument Sec. Litig.*,
  209 F.Supp.2d 423 at 434 (E.D. Pa. 2001)..................................................................12

*In re Greenwich Pharm. Sec. Litig.*,
  No. 93-cv-2071, 1995 WL 251293 (E.D. Pa. Apr. 25, 1995) ......................................13

*In re Intelcom Group, Inc. Sec. Litig.*,
  No. 95-D-1166 (D. Colo. Mar. 21, 1997)....................................................................13

*In re Prudential Bache Energy Income P'ships Sec. Litig.*,
  No. 888, 1994 WL 202394 (E.D. La. May 18, 1994)....................................................11

*In re Ravisent Technologies, Inc. Sec. Litig.*,
  No. 00-cv-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ......................................11

*In re Safety Components Int'l. Inc. Sec. Litig.*,
  166 F.Supp.2d 72 at 109 (D.N.J. 2001) ......................................................................12

*In re Union Carbide Corp. Consumers Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) ..............................................................................19

*In re Unisys Corp. Sec. Litig.*,
  No. 99-cv-5333, 2001 WL 1563721 (E.D. Pa. Dec. 6, 2001)......................................12

*In re Vitek, Inc.*,
  51 F.3d 530 (5th Cir. 1995) ...........................................................................................9

*In re Warner Comms. Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 2005) ..............................................................................19

iii

*In re Westinghouse Sec. Litig.*,
    Nos. 91-354, 97-309, 97-960 (W.D. Pa. Oct. 19, 1999)................................................. 12

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 717 (5th Cir. 1974) ................................................................................... 4, 15

*Kirchoff v. Flynn*,
    786 F.2d 320 (7th Cir. 1986) ....................................................................................... 11

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) ......................................................................................... 5

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................................... 4, 18

*Mills v. Elec. Auto-Lite*,
    396 U.S. 375 (1970) ....................................................................................................... 4

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ..................................................................................................... 16

*Prudential-Bache Securities, Inc. v. Matthews*,
    627 F. Supp. 622 (S.D. Tex. 1986)................................................................................ 3

*Ressler v. Jacobson*,
    149 F.R.D. 651 (M.D. Fla. 1992) ................................................................................ 16

*Schwartz v. TXU*,
    No. 02-CV-2243 (EK) 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .................. passim

*Shaw v. Toshiba America Info. Sys., Inc.*,
    91 F. Supp. 2d 942 (E.D. Tex. 2000)....................................................................... 4, 15

*Sonnenfeld v. City and County of Denver, Colorado*,
    No. 95-Z-468 (D. Colo. Dec. 8, 1997) ........................................................................ 12

*Vladimir, et al. v. Deloitte & Touche*,
    No. 95-cv-10319 (S.D.N.Y. Sep. 18, 1998) ................................................................ 12

*Yuan v. Bayard Drilling Technologies, Inc.*,
    No. 98-cv-171-M (W.D. Okla. July 10, 2001) ............................................................ 12

## **Other Authorities**

Manual for Complex Litigation (3rd) (1995)....................................................................... 4

iv

## I.  PRELIMINARY STATEMENT

Counsel for Lead Plaintiff in the class action *Ruth Lentz v. Citadel Security Software, Inc.*, *et al.*, Civil Action No. 3-05-CV-0100-D (the "Class Action", counsel is "Class Counsel") and the plaintiff in the shareholder derivative action *Hans J. Baier v. Steven B. Solomon, et al.*, 3:05-CV-0846-D (the "Derivative Action", counsel is "Derivative Counsel"; Class and Derivative Counsel are collectively "Plaintiffs' Counsel") respectfully move the Court for: 1) an award of attorneys' fees in the amount of $583,333.33 plus *pro rata* interest earned thereon; and 2) reimbursement of $93,696.86 in expenses.

The parties are seeking settlement of the Class and Derivative Actions (the "Settlement").  As a result of the settlement of the Class Action, a cash Settlement Fund of $1,750,000 plus interest has been established for the benefit of the Class.  As a result of the settlement of the Derivative Action, the case has been dismissed, in the best interests of Citadel Security Software, Inc. ("Citadel" or the "Company").  In exchange, claims against Citadel, Steven B. Solomon, Richard Connelly, and Chris A. Economou, defendants in the Class and/or Derivative Actions (collectively "Defendants"), have been dismissed.

This Settlement was made possible through the diligent efforts of Class Counsel, Murray, Frank & Sailer LLP and Labaton Sucharow & Rudoff LLP, and Derivative Counsel, Federman & Sherwood.  As such, Plaintiffs' Counsel request that this court award a fee of $583,333.33, which represents one-third of the Settlement Fund, plus *pro rata* interest earned thereon, at the rated earned by the Settlement Fund.  Plaintiffs'

Counsel also request reimbursement of $93,696.86 in out of pocket expenses that were incurred in prosecuting the Class and Derivative Actions.[1]

This memorandum solely addresses the legal standards applicable to attorneys' fee requests by successful plaintiffs' attorneys in class and derivative actions. This memorandum address the appropriateness of the fees and expenses requested by Plaintiffs' Counsel in this case, based on the benefit that Class Counsel have achieved for the members of the Class; the benefit Derivative Counsel has achieved for the Company; the numerous and significant risks undertaken on a wholly contingent basis by Plaintiffs' Counsel; the diligent and skillful prosecution by Plaintiffs' Counsel; and the absence of objections in both the Class and Derivative Actions.

## II.   ARGUMENT

### A.   Plaintiffs' Counsel is Entitled to an Award of Attorneys' Fees and Reimbursement of Expenses

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S.

---

[1] Submitted herewith are Plaintiffs' Memorandum of Law in Support of Final Approval of Settlement and Plan of Allocation (the "Settlement Memorandum"), the Declaration of Lawrence D. McCabe in Support of the Motion for Final Approval of the Settlement and Request for Attorneys' Fees and Reimbursement of Expenses (the "McCabe Declaration"),[1] and the Affidavit of Paul Mulholland, Re: Mailing and Publication of Notice and Requests for Exclusion, sworn to on December 5, 2006 and submitted herewith (the "Claims Administrator Affidavit"). The Settlement Memorandum discusses, *inter alia*, the legal standards for approval of the Settlement under the standards applicable in this Circuit, together with an analysis of the scope, complexity, and risks associated with both the Class and Derivative Actions, demonstrating that the Settlement of the Class and Derivative Actions is fair, reasonable, and adequate. The McCabe Declaration provides factual support for the fairness of the Settlement, as well as for the fee and expense application. Rather than repeating the matters set forth in the Settlement Memorandum and the McCabe Declaration, Plaintiffs' Counsel respectfully incorporates by reference the matters contained therein.

472, 478 (1980). The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense. *Id.* This, in turn, has the effect of encouraging meritorious litigation. *Prudential-Bache Securities, Inc. v. Matthews*, 627 F. Supp. 622, 625 (S.D. Tex. 1986).

The Supreme Court has expressly recognized that private securities actions are "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to . . . [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 310 (1985). Securities class actions and shareholder derivative actions should be encouraged by the courts; this is accomplished in part by awarding adequate financial incentives to attorneys who prosecute these actions on behalf of classes of injured persons or companies.

**B.    The Standard Governing the Award of Attorneys' Fees**

Courts have used two methods to calculate attorneys' fees in class actions: the "percentage of recovery" approach and the "lodestar" approach. Under the "percentage of recovery" approach, the fee is based on a percentage of the fund recovered. Under the "lodestar" approach, a court must first determine the "lodestar," *i.e.*, the number of hours spent by each legal professional multiplied by the hourly rate for each professional, and then determine what multiplier is appropriate in light of such factors as the contingent nature of the representation and the quality of the work performed.

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") states that, in class actions brought under federal securities law, "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff shall not exceed a reasonable percentage of the amount" recovered for the Class. 15 U.S.C. § 78u-4(a)(6). Courts in other

districts have concluded that by drafting the PSLRA as it did, Congress expressed a preference for the percentage method for determining attorneys' fees in securities class actions. *See, e.g., Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002); *In re American Bank Note Holographics*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001). The trend among federal courts has been toward the percentage of the fund method. Manual for Complex Litigation (3rd) (1995). The First, Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuit Courts, along with the District of Columbia, either allow judges to use the percentage method or require them to do so. *Shaw v. Toshiba America Info. Sys., Inc.*, 91 F. Supp. 2d 942, 964-65 (E.D. Tex. 2000) (collecting cases).

Although the Fifth Circuit has not formally adopted the percentage of recovery approach, a number of cases within this district and others have applied the percentage of recovery approach to class actions. *See id.* at 966-67. Other courts in this Circuit have applied a blended method, assessing the reasonableness of the percentage award using the factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 717, 771-19 (5th Cir. 1974). *See*, *e.g.*, *Schwartz v. TXU*, No. 02-CV-2243 (EK) 2005 WL 3148350 at *27-34 (N.D. Tex. Nov. 8, 2005) (Kinkeade, J); *Shaw*, 91 F. Supp. 2d at 968-73.

Similarly, fees are frequently awarded "in shareholders' derivative actions, where courts increasingly have recognized that the expenses incurred by one shareholder in the vindication of a corporate right of action can be spread among all shareholders through an award against the corporation, regardless of whether an actual money recovery has been obtained in the corporation's favor." *Mills v. Elec. Auto-Lite*, 396 U.S. 375, 626 (1970). "The fact that [the corporation] did not receive a specific monetary recovery does not

prevent an award of attorneys' fees." *Maher v. Zapata Corp.*, 714 F.2d 436, 457 n. 38 (5th Cir. 1983) (Fifth Circuit upheld an award of attorneys' fees in a derivative action, even though no monetary recovery was awarded to the company) (collecting cases).

###    C.    The Requested Fee is Fair and Reasonable under the *Johnson* Factors

The fee requested here meets all of the factors set forth by the Fifth Circuit in *Johnson*. Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d 717-19.

###    1.    The Time and Labor Required

Plaintiffs' Counsel expended substantial time and effort pursuing the Class Action on behalf of the Class, and the Derivative Action on behalf of the Company, litigating the cases for over a year and a half. In that time, Plaintiffs' Counsel devoted 2299.11 hours to their respective litigations with a resulting lodestar of $991,887.35. *See* McCabe Decl, at ¶ 57; each firm's declarations in support of an award of attorneys fees and reimbursement of expenses, attached as Exs. A-E to the McCabe Declaration ("Individual Declarations"). As such, the fee requested would result in a negative multiplier of 59%. In the course of the Class Action, Class Counsel conducted a thorough investigation and

5

diligent prosecution, and performed the following tasks in furtherance of the Class Action:

a.    Conducted a factual investigation;

b.    Drafted initial complaints, which included a review of Citadel's public filings (including 10-K's, 10-Q's and press releases filed on Form 8-K), other public statements, news articles and conference calls;

c.    Filed initial complaints with this Court;

d.    Filed a motion for appointment of Lead Plaintiff and Co-Lead Counsel;

e.    Drafted oppositions to lead motions from other potential lead plaintiffs;

f.    Conducted an investigation of the Company and interviewed former Citadel employees who provided information on the alleged false nature of Citadel's sales forecasts, sales problems, inflation of projections (*i.e.* "shade"), Citadel's lack of a pipeline and accounting controls, and the alleged sham nature of the $1.7 million deal announced in February 2004;

g.    Drafted and filed the Plaintiff's Consolidated Complaint for the Violation of Federal Securities Laws ("Consolidated Complaint"), which included a review of Citadel's public filings, annual reports, and other public statements;

h.    Analyzed Defendants' Motion to Dismiss, and researched, drafted and filed a memorandum of law in opposition to the Motion to Dismiss;

i.    Analyzed Defendants' reply memorandum in further support of their Motion to Dismiss;

j.    Worked with an expert to obtain a damages analysis;

k.    Worked with Derivative Counsel, who also conducted an investigation, spoke with former employees, and consulted with experts;

l.    Negotiated the Settlement and drafted the Stipulation of Settlement and its various exhibits, including the Notice and Summary Notice;

m.    Petitioned the Court for preliminary approval of the Settlement and the form of Notice mailed to the Class; and

n.    Worked with, and will continue to work with as necessary, the Claims Administrator in ensuring administration of the Settlement and distribution of the Settlement Fund.

*See* McCabe Declaration, ¶ 63.

Similarly, Derivative Counsel also conducted a separate investigation of Citadel, both prior to and after initiating the Derivative Action.    Derivative Counsel's investigation included locating and interviewing former Citadel employees, analyzing the Company's corporate governance, corporate structure, the events leading to the litigation and the financial standing of the Company.    Specifically, Derivative Counsel concentrated on issues regarding breaches of fiduciary duty by the Individual Defendants. Id. at  ¶ 64.   Derivative Counsel used the information and evidence obtained during its investigation along with their consultations to conclude that the Settlement was in the best interest of the Company.  Id. at ¶ 14.

Both Class and Derivative Counsel undertook all of these efforts on a wholly contingent basis, investing substantial time, resources, and money to prosecute these actions without any guarantee of compensation.  Unlike defendants' attorneys, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Plaintiffs' Counsel have not been compensated for any time or expenses since these cases began.    Indeed, Plaintiffs' Counsel would have received no compensation or even reimbursement of expenses had these cases not been successful.

Moreover, even in cases where a recovery is obtained, there is no guarantee that the award, even if a reasonable percentage is awarded, would adequately compensate

counsel.  In fact, in this case, the fee that Plaintiffs' Counsel is requesting is less than Plaintiffs' Counsel's lodestar.

### 2.    The Novelty and Difficulty of the Issues

The risk associated with a case undertaken on a contingent basis is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir. 1974).

Courts have widely recognized that shareholder actions are difficult and uncertain.  *See Schwartz*, 2005 WL 3148350, at *29.  The Class Action is no different. As described in detail in the McCabe Declaration, Defendants moved to dismiss the Class Action, arguing that safe harbor, scienter, and "fraud by hindsight" grounds rendered the Consolidated Complaint inadequate on the pleadings.  McCabe Declaration ¶ 8.  While Class Counsel believe the claims would survive Rule 12(b)(6) scrutiny, there is a possibility that the Consolidated Complaint would have been dismissed at the pleading stage.  Furthermore, even if Lead Plaintiff survived the motion to dismiss, Defendants would likely move for summary judgment before the case went to trial.  *Id.* at ¶ 8.  A summary judgment motion would provide substantial risk for Lead Plaintiff.  Even if the Class Action went to trial, the case involved challenging causation and damages issues which would have been difficult to prove and explain to a jury.  *Id.* at ¶ 47.  Finally even if Lead Plaintiff were to win at trial, such a victory could be reversed on appeal.  *Id.*

The Class Action also faced risks unrelated to the merits of the case. Citadel was a company in a precarious financial condition that had minimal revenue or cash available to fund a settlement. Accordingly, any meaningful portion of a settlement would have to come from the proceeds of Citadel's Director's and Officer's insurance policy (the "D&O policy") worth $5,000,000. This policy was a "wasting policy" in that Defendants' attorneys' fees are to be paid out of the policy, so the available funds of the policy would diminish as the litigation progressed. *Id.* at ¶ 8.

Because of Citadel's precarious financial position, evidenced by its continuing losses and mounting debt obligations set forth in its publicly filed financial statements, Lead Plaintiff was aware of the danger that Citadel lacked the financial resources to fund a settlement or pay any judgment and might be forced into bankruptcy, either voluntarily or involuntarily. If the company were to declare bankruptcy before the case was resolved through settlement or judgment, the Class would likely lose their claims. Moreover, it is possible that creditors in the bankruptcy would attempt to claim the proceeds of the D&O policy. While the case law is quite complex concerning the circumstances under which a D&O policy becomes part of a debtor's estate, *see In re Vitek, Inc.*, 51 F.3d 530 (5th Cir. 1995), it is possible that potential creditors might attempt to claim the proceeds of such a policy. This could delay any recovery from the D&O policy by several years. If it was found that the D&O policy was part of the estate, the Class would not receive the benefit of the policy. *Id.* at ¶ 8.

Similarly, the Derivative Action, also taken on a contingent basis, involved much novelty and difficulty. The Derivative Action, involving complex issues of corporate fiduciary duty, abuse of control, insider selling, misappropriation of information, unjust

enrichment, and violations of the Sarbanes-Oxley Act, faced significant hurdles. *Id.* at ¶ 51. Thus, the risks inherent in prosecuting the Derivative Action were also substantial.

### 3.    The Skill Requisite to Perform the Legal Service Properly

The quality of the representation of Plaintiffs' Counsel is best evidenced by its accomplishments. Despite vigorous opposition by Defendants throughout the Class Action, and their adamant refusal to either admit liability or to agree to any damages, Defendants agreed to pay $1,750,000 in cash to the Class, in settlement of both the Class and Derivative Actions.

Plaintiffs' Counsel were faced with formidable opposition in both the Class and Derivative Actions. Defendants were represented by one of the most highly regarded law firms in the nation with extensive experience in securities litigation. That Plaintiffs' Counsel were able to obtain a substantial settlement for both the Class and Derivative Actions while opposed by such formidable defense counsel is additional confirmation of the quality of their representation in this matter, and is another factor for the Court to consider in determining the reasonableness of Plaintiffs' Counsel's fee request. *See, e.g., In re Equity Funding Corp. Sec. Litig.*, 420 F. Supp. 610, 638 (D. Colo. 1976).

### 4.    The Preclusion of Other Employment

The 2299.11 hours spent by Plaintiffs' Counsel on both the Class and Derivative Actions was at the expense of time that counsel could have devoted to other matters. Accordingly, this factor supports Plaintiffs' Counsel's request for fees. *See Schwartz*, 2005 WL 3148350, at *31.

5.    **The Customary Fee**

The percentage-of-recovery method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements.  *Kirchoff v. Flynn*, 786 F.2d  320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'" (emphasis added)).  In personal injury non-class litigation, 33 1/3% contingency fees are typical.  As Justices Brennan and Marshall observed in their concurring opinion in *Blum v. Stenson*: "In tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery."  465 U.S. 866 at 902 n.19 (1984); *see also In re Prudential Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394, at *2 (E.D. La. May 18, 1994) ("Were this not a class action, attorney's fees would range between 30% and 40%, the percentages commonly contracted for in contingency cases.").

The percentage of the fund requested herein is comparable to fees that have been awarded in class actions by Courts in this and other Circuits.[2]  *See Branca v. Paymentech, Inc.*, No. 97-cv-2507-l (N.D. Tex. Jan. 4, 2001) (Lindsay, J.) (approving attorney's fees of 33 1/3% of $2 million settlement fund in securities class action); *In re Ravisent Technologies, Inc. Sec. Litig.*, No. 00-cv-1014, 2005 WL 906361 at, *15 (E.D. Pa. Apr. 18, 2005) (approving attorneys' fees of 33 1/3% of $7 million settlement fund in securities class action); *Kaufman v. Motorola, Inc.*, No. 95-cv-1069 (N.D. Ill. May 24, 2001) (approving attorneys' fees of 33 1/3% of $25 million settlement fund in securities class action); *In re Engineering Animation Sec. Litig.*, 203 F.R.D. 417 at 423 (S.D. Iowa

---

[2] A compendium of the unreported cases cited herein, where district courts in securities class actions in this Circuit and others have awarded fees of 30% or more of the settlement fund, is attached to the McCabe Declaration as Exhibit F.

2001) (approving attorneys' fees of 33 1/3% of $7.5 million settlement fund in securities class action); *Yuan v. Bayard Drilling Technologies, Inc.*, No. 98-cv-171-M (W.D. Okla. July 10, 2001) (approving attorneys' fees of 33 1/3% of $3.1 million settlement fund in securities class action); *In re General Instrument Sec. Litig.*, 209 F.Supp.2d 423 at 434 (E.D. Pa. 2001) (approving attorneys' fees of 33 1/3% of $48 million settlement fund in securities class action); *In re Safety Components Int'l. Inc. Sec. Litig.*, 166 F.Supp.2d 72 at 109 (D.N.J. 2001) (approving attorneys' fees of 33 1/3% (after expenses) of $4.5 million settlement fund in securities class action); *In re Unisys Corp. Sec. Litig.*, No. 99-cv-5333, 2001 WL 1563721, at * 3 (E.D. Pa. Dec. 6, 2001) (approving attorneys' fees of 33% of $5.75 million settlement fund in securities class action); *In re Westinghouse Sec. Litig.*, Nos. 91-354, 97-309, 97-960 (W.D. Pa. Oct. 19, 1999) (approving attorneys' fees of 33 1/3% of settlement fund in securities class action); *In re Ancor Communications, Inc. Sec. Litig.*, No.97-cv-1696 (D. Minn. Feb. 5, 1999) (approving attorneys' fees of 33 1/3% in securities class action); *In re Baesa Sec. Litig.*, No. 96-cv-7435 (S.D.N.Y. Oct. 7, 1998) (awarding attorneys' fees of 33 1/3% of settlement fund in securities class action); *Vladimir, et al. v. Deloitte & Touche*, No. 95-cv-10319 (S.D.N.Y. Sep. 18, 1998) (approving attorneys' fees of 33% of settlement fund in securities class action); *Blatt v. Merrill Lynch, Peirce, Fenner & Smith, Inc.*, No. 94-2348 (D.N.J. Mar. 4, 1998) (approving attorneys' fees of 33% of settlement fund in securities class action); *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 286 (D. Minn. 1997) (approving attorneys' fees of 33% of $86 million settlement fund in class action); *Sonnenfeld v. City and County of Denver, Colorado*, No. 95-Z-468 (D. Colo. Dec. 8, 1997) (approving attorneys' fees of 33 1/3% of $4.5 million settlement fund in securities

class action); *In re Intelcom Group, Inc. Sec. Litig.*, No. 95-D-1166 (D. Colo. Mar. 21, 1997) (approving attorneys' fees of 33 1/3% of $2.5 million settlement fund in securities class action); *In re Copley Pharmaceutical*, *Inc. Sec. Litig.*, No. 94-11897-WGY (D. Mass. Feb. 8, 1996) (approving attorneys' fees of 33 1/3% of settlement fund in securities class action); *In re Greenwich Pharm. Sec. Litig.*, No. 93-cv-2071, 1995 WL 251293, at *6 (E.D. Pa. Apr. 25, 1995) (approving attorneys' fees of 33 1/3% of $4.375 million settlement fund in securities class action).

Because Plaintiffs' Counsel's requested fee of 33 1/3% is well within the range normally awarded in cases of this type, this factor supports Plaintiffs' Counsel's request for fees.

## 6.    Whether the Fee Is Fixed or Contingent

Plaintiffs' Counsel undertook the Class and Derivative Actions on a contingent fee basis, assuming a substantial risk that the litigations would yield no recovery and leave them uncompensated.    Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *Id*.  In complex cases of this type, the risk of no recovery is very real.  For example, the Fifth Circuit has affirmed 90% of dismissals of securities actions based solely on the adequacy of the pleadings under the PSLRA.  *Schwartz*, 2005 WL 3148350, at *32. Finally, Plaintiffs' Counsel have received no compensation during the course of the Class and Derivative Actions and have incurred significant expenses in prosecuting the Class Action for the benefit of the Class, or the Derivative Action of behalf of the Company. *See* McCabe Decl. ¶ 60.  For these reasons, this factor supports Plaintiffs' Counsel's request for fees.

**7.**    **Time Limitations Imposed by the Client or Circumstances**

Throughout the pendency of the Class and Derivative Actions,  as stated above, due to Citadel's financial position and poor financial performance (as evidenced by the Company's publicly filed financials) after the truth was disclosed (which led to eventual delisting from NASDAQ), Lead Plaintiff was aware of the danger that Citadel did not have the resources to fund a settlement or pay a judgment, and was concerned that Citadel might be forced into bankruptcy, either voluntarily or involuntarily.  As stated above, if Citadel were to declare bankruptcy before the case was resolved through settlement or judgment, the action against Citadel would have been stayed, the claims against the Company would be worthless, and it is likely that creditors in this bankruptcy would attempt to claim the proceeds of the D&O policy; if they did so the Class might not have been able to receive the benefit of the policy.  *See* McCabe Decl. ¶ 8.  Similarly, as stated above, any bankruptcy would effectively terminate the Derivative Action.  *See Id.* at ¶ 10.

Accordingly, Plaintiffs' Counsel settled the Class and Derivative Actions at this point, in part, because of Citadel's financial condition, inability to fund a settlement, and its inability to pay any judgment.  Had they chosen to litigate the case further, and if the Company had entered bankruptcy, there is a strong possibility that the cases would not have been resolved as favorably.

**8.**    **The Amount Involved and Results Achieved**

Plaintiffs' Counsel, after devoting substantial time and effort to this case, obtained a settlement of $1,750,000 on behalf of the Class.[3]   In light of the substantial risks

---

[3] Settling the Derivative Action (brought on behalf of the Company) through dismissal was a favorable result for Citadel.  As the Derivative Action progressed,

14

presented by both the Class and Derivative Actions, this represents an excellent resolution. The reasonableness of Plaintiffs' Counsel's request is confirmed by cross-checking the proposed award against the lodestar of Plaintiffs' Counsel. *See Shaw*, 91 F.Supp.2d at 968. Here, the negative multiplier of 59% confirms that a 33 1/3% award is reasonable even though it does not fully compensate Plaintiffs' Counsel for all of the work done in this case. *See, e.g., In re Blech Sec. Litig.*, 94 CIV. 7696(RWS), 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000) (The reasonableness of plaintiffs' request for fees "is reinforced by evidence that the percentage fee would represent a negative multiplier of the lodestar.").

In order to perform the lodestar cross check, a court must engage in a two step analysis. First, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate. *Shaw*, 91 F. Supp. 2d at 968. Second, the court adjusts that lodestar figure (by applying a multiplier) to reflect the *Johnson* factors. *Id*.

In total, Plaintiffs' Counsel spent 2299.11 hours working on this case. *See* Individual Declarations. To arrive at the lodestar, the hours expended are multiplied by each attorneys' respective hourly rate. Here, this calculation demonstrates that the aggregate "Base" lodestar for Plaintiffs' Counsel's efforts is $991,887.35. In determining whether the rates used to perform this calculation are reasonable, the Court should take into account the attorneys' legal reputation, experience, and status. The Supreme Court

---

Derivative Counsel realized that, due to the precarious financial nature of Citadel, the burden to the Company in litigating the Derivative Action would outweigh any potential remedial measures that would have been received as a result of continued litigation. McCabe Decl. at ¶ 14. In addition, the time spent by the Company's officers and directors of the litigation would have distracted them from their best efforts to run the company. *Id.*

has held that the use of *current* rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-85 (1989). On this basis, the rates charged by Plaintiffs' Counsel are reasonable, and have been used and accepted by courts across the country.

Approval of the 33 1/3% attorneys' fee award would result in a negative multiplier of 59%. This amount is more than justified given a review of the magnitude, complexity, and risks of the Class and Derivative Actions, summarized herein and detailed in the McCabe Declaration. This negative multiplier also falls below the range of multipliers found reasonable for cross-check purposes by courts in this Circuit and is actually less than would be justified here given the quality of the legal services rendered and the results achieved. *See Di Giamoco v. Plains All Am. Pipeline*, Case Nos. H-99-4137, H-99-4212, 2001 U.S. Dist. LEXIS 25532, at *31 (S.D. Tex. 2001) (awarding a 30% attorney fee where the lodestar multiplier was 5.3); *Blech*, 2000 WL 661680 at *5 (the reasonableness of plaintiffs' request for fees "is reinforced by evidence that the percentage fee would represent a negative multiplier of the lodestar").

### 9.    The Experience, Reputation, and Ability of the Attorneys

The reputation of Plaintiffs' Counsel supports the reasonableness of the requested fee. *See Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992). Class Counsel have extensive experience in litigating securities class actions, have frequently served as lead or co-lead counsel in such actions, have obtained significant recoveries for shareholders, and have strong reputations in the legal community, as described in their respective firm resumes, submitted herewith. Similarly, Derivative Counsel have extensive experience in litigating shareholder derivative actions, have obtained significant recoveries on behalf of

many companies, and have a strong reputation in the legal community, as described in its firm resume, submitted herewith.  See the Individual Declarations, attached as Exs. A-E to the McCabe Declaration, and resumes attached thereto.  This Settlement represents a favorable result for both the Class and the Company that is attributable to the hard work and determination of Plaintiffs' Counsel.

### 10.    The Undesirability of the Case

Elevated risks and the possibility of no recovery in class action cases certainly speak to the undesirability of those cases.  *Schwartz*, 2005 WL 3148350, at *33 (citing *Di Giamoco*, 2001 U.S. Dist. LEXIS 25532, at *35).

Neither the Class nor Derivative Action could reply upon any investigation by the SEC or other governmental body from which to build a case.  Moreover, it was certain that in the Class Action, Defendants would attempt to rely on claims of statutory safe harbor defenses.  In addition, it appeared from the outset of the Class and Derivative Actions that Citadel did not have the financial resources to fund either a settlement or a judgment, so that any potential monetary recovery was limited to the $5 million D&O policy.  McCabe Decl. ¶ 38.  The undesirability of this case supports Plaintiffs' Counsel's request for attorneys' fees.

### 11.    Nature and Length of Relationship With the Client

A court should presume that the fee is reasonable when it is the result of an agreement between the court appointed Lead Plaintiff and chosen counsel.  *Schwartz*, 2005 WL 3148350, at *33 (citing Third Circuit Task Force Report, *Selection of Class Counsel*, 208 F.R.D. 340, 425 (2002)).  This factor supports Plaintiffs' Counsel's request for fees.

17

12.    **Awards in Similar Cases**

As stated in Section II.C.5 above, Plaintiffs' Counsel's requested fee of 33 1/3% is well within the range normally awarded in cases of this type.  Accordingly, this factor supports Plaintiffs' Counsel's request for fees.

D.    **Public Policy Considerations**

The federal securities laws are remedial in nature.  To effectuate their purpose of protecting investors, the courts must encourage private lawsuits.  *Basic, Inc. v. Levinson*, 485 U.S.224, 230-31 (1988).  The typical class representative is unlikely to be able to pursue long and protracted litigation at his or her own expense, and would not likely do so with the knowledge that others similarly situated will be able to "free ride" on these efforts at no cost or risk to themselves.  Lawyers that pursue private suits such as this on behalf of investors augment the overburdened SEC by "acting as 'private attorneys general.'" *Ressler*, 149 F.R.D. at 657.  Thus, "public policy favors the granting of [attorneys'] fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions." *Id.  See also Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorneys' fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Medical X-Ray*, No. CV-93-5904, 1998 WL 661515, at *8 (E.D.N.Y. Aug. 7, 1998) (awarding fee of 33 1/3% because it "furthers the public policy of encouraging private lawsuits,"); *Chatelain v. Prudential Bache-Secs. Inc.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992) (determining "an adequate award furthers the public policy of encouraging private lawsuits in pursuance of the remedial federal securities laws"); *In re Warner Comms. Sec. Litig.*, 618 F. Supp. 735, 750-51 (S.D.N.Y. 2005) (observing that "[f]air awards in cases such as this encourage and support other

18

prosecutions, and thereby forward the cause of securities law enforcement and compliance"). As Chief Judge Brieant observed in *In re Union Carbide Corp. Consumers Prods. Bus. Sec. Litig.*, 724 F. Supp. 160 (S.D.N.Y. 1989):

> Enforcement of the federal securities laws should be encouraged in order to carry out the statutory purpose of protecting investors and assuring compliance. A large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken.

*Id.* at 169.

Without the willingness of Class Counsel to assume the risks associated with the Class Action, members of the Class would not have recovered anything. As actionable securities fraud exists and society benefits from strong advocacy on behalf of securities holders, public policy favors the granting of the fee and expense application.

### E.    No Objections by Class Members or Current Shareholders Underscores the Reasonableness of the Fee Request

The reasonableness of the requested fee is underscored by the minimal number of objections to it on the part of Class members. As stated above, over 10,000 copies of the Notice were mailed to both 1) potential members of the Class and 2) current holders of Citadel stock, specifically indicating the terms of the settlement, and that Plaintiffs' Counsel would apply for a fee award of up to 33 1/3% of the Settlement Fund. Any class member or current holder could object to either the settlement or the fee application. The last day for class members to submit an objection to the Settlement or compensatory awards was November 20, 2006. To date, <u>zero</u> objections and <u>zero</u> exclusions have been

submitted.   *See* McCabe Declaration, Ex. 17.    This lack of significant objection evidences that the Settlement and the fee requested are appropriate.[4]

> **F.    Plaintiffs' Counsel's Expenses Were**
> **Reasonably Incurred and Necessary to the**
> <u>**Prosecution of this Action and Should be Reimbursed**</u>

Plaintiffs' Counsel also request reimbursement of $93,696.86 in expenses incurred while prosecuting this action.  Plaintiffs' Counsel's expenses are itemized in the Individual Declarations.

These expenses are properly recoverable by counsel.  *See, e.g., Schwartz*, 2005 WL 3148350, at *34 (reimbursing class counsel for reasonable out-of-pocket expenses necessary to the representation of the class).  Expenses accrued include those for copying, professional services rendered by experts, computerized research, court fees, and postage. Plaintiffs' Counsel submit that the expenses itemized in their respective declarations were both necessary and reasonable.    Accordingly, Plaintiffs' Counsel ask that they be reimbursed for such expenses.

<u>**CONCLUSION**</u>

Based on the foregoing and the entire record, Plaintiffs' Counsel respectfully request that the Court award attorneys' fees of 33 1/3% of the Settlement Fund, together with the *pro rata* share of interest earned thereon,  plus reimbursement of $93,696.86 in expenses.

---

[4]    No requests for exclusion from the Settlement have been received.   This number is especially relevant given that over 10,000 Notices have been sent.  McCabe Decl, at ¶ 4. Further, the requests for exclusion from the Settlement do not reflect any negative reaction to Plaintiffs' Counsel's fee request.

## <u>CERTIFICATE OF SERVICE</u>

On December 5, 2006, all counsel of record were served electronically with this document, and all accompanying documents submitted herewith, on the date of filing pursuant to the Court's Standing Order Designating Case for Enrollment in the Electronic Case Files "ECF" System.

<u>  /s/ Lawrence D. McCabe  </u>.

Dated:  December 5, 2006                    /s/Lawrence D. McCabe

Marvin L. Frank
Lawrence D. McCabe
**MURRAY, FRANK & SAILER LLP**
275 Madison Avenue, Suite 801
New York, NY 10016
Telephone: (212) 682-1818
Facsimile:  (212) 682-1892

- and -

Joseph M. Sternberg
Beth Hoffman
**LABATON SUCHAROW**
  **& RUDOFF LLP**
100 Park Avenue
New York, NY 10017
Telephone: (212) 907-0700
Facsimile:  (212) 818-0477

**Class Counsel**

Randall K. Pulliam
**BARON & BUDD, P.C.**
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
Telephone: (214) 521-3605
Facsimile:  (214) 520-1181

**Liaison Class Counsel**

William B. Federman
**FEDERMAN & SHERWOOD**
120 N. Robinson, Suite 2720
Oklahoma City, OK 73102
Telephone:    (405) 235-1560
Facsimile:     (405) 239-2112

-and-

2926 Maple Avenue, Suite 200
Dallas, TX 75201

**Derivative Counsel**