IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

---------------------------------------- x
                                         )
RUTH LENTZ, Individually and On Behalf of )   CIVIL ACTION NO. 3:05-CV-0100-D
All Others Similarly Situated,           )   (Consolidated with
                                         )   Civil Action No. 3:05-CV-0142-D
            Plaintiff,                   )   Civil Action No. 3:05-CV-0157-D
                                         )   Civil Action No. 3:05-CV-0184-D
       – vs.–                            )   Civil Action No. 3:05-CV-0203-D
                                         )   Civil Action No. 3:05-CV-2097-D
CITADEL SECURITY SOFTWARE INC., et       )   and
al.                                      )   Civil Action No. 3:05-CV-0488-D)
                                         )
            Defendants.                  )
                                         )
---------------------------------------- x

**LEAD PLAINTIFF'S BRIEF IN SUPPORT OF MOTION
TO AUTHORIZE DISTRIBUTION OF NET SETTLEMENT FUND,
INCLUSION OF LATE CLAIMS, PAYMENT OF FEES
AND EXPENSES FOR CLAIMS ADMINISTRATION,
AND DONATION OF ANY RESIDUAL BALANCE**

**Preliminary Statement**

Lead Plaintiff Citadel Investors Group (consisting of Timothy M. Turose and Elaine Turose, Lee Waters and Howard Dayton) respectfully submits this brief in support of its motion to: (a) authorize the distribution of the Net Settlement Fund to Authorized Claimants, including certain late claimants, in accordance with the recommendation of the Claims Administrator; (b) authorize the Claims Administrator to deem as timely otherwise eligible claims that were submitted with postmarks later than the January 4, 2007 deadline and direct that no claims received after November 9, 2007 be accepted; (c) authorize the payment of fees and the reimbursement of expenses to the Claims Administrator in the amount of $103,894.01, for its

work in providing notice to the Class and administering the claims process, including estimated fees and expenses to be incurred in connection with the preparation and mailing of checks to the Authorized Claimants; and (d) authorize the donation of any residual, unclaimed balance of the Net Settlement Fund to the Institute for Law and Economic Policy ("ILEP"), a private, non-sectarian, not-for-profit corporation with Internal Revenue Code §501(c)(3) tax deductible status.

### Procedural Background

On December 15, 2006, this court entered a Final Judgment and Order Approving Settlement, and Dismissal With Prejudice (the "Judgment") granting final approval to the settlement of this action in accordance with the Stipulation of Settlement dated September 19, 2006, settling the Class' claims for $1,750,000, and dismissing the class action and a derivative action arising out of the same underlying facts with prejudice.

No appeal was taken from the Judgment and it has become final. The Court's Preliminary Order entered September 26, 2006, scheduling the final approval hearing on the settlement, directing that notice be provided to the Class, and preliminarily approving the settlements of the class action and derivative action, also granted Lead Plaintiff's counsel leave to retain Strategic Claims Services ("SCS") to act as Claims Administrator on behalf of the Settlement Class. The form of notice approved by the court in the Preliminary Order directed members of the Settlement Class to submit their Proofs of Claim to SCS, and directed that such claims be postmarked not later than 90 days from the date of the Notice unless the Court extended such period. Ninety days from the date of the Notice required that the Proofs of Claim be postmarked not later than January 4, 2007.

As noted in the affidavit of Paul Mulholland, president of SCS, sworn to November 9, 2007 (the "Mulholland Affidavit") (A 11) and submitted herewith in support of the motion, 27

otherwise proper Proofs of Claim reached SCS with postmarks after January 4, 2007. Mr. Mulholland states, in paragraph 13 of his affidavit (A 15), that the primary reason for the late filings was that the claimants in question held their securities in street name, and their brokers failed to forward the Notice and Proof of Claim Forms to them in a timely fashion. Accordingly, Mr. Mulholland, on behalf of the Claims Administrator, has recommended that the Court grant leave to accept the 27 otherwise valid late claims, which will not delay the distribution from the Net Settlement Fund.

As is also indicated in the Mulholland Affidavit, SCS has processed the Proofs of Claim, calculated the Recognized Losses reflected therein consistent with the Plan of Allocation, has completed the processing of the claims, including the 27 claims submitted with postmarks after the January 4, 2007 postmark deadline, and has calculated the share of the Net Settlement Fund to which each of the Authorized Claimants is entitled. Exhibit D to the Mulholland Affidavit (A 22-31) contains the names of the Authorized Claimants, and, in the right hand column, the percentage interest of each such Claimant in the Net Settlement Fund. While the claims processing proceeded, the Net Settlement Fund has been invested and earning interest. If the within motion is granted, the Claims Administrator will apply the percentage interests to the amount in the Net Settlement Fund as close as possible to the date of distribution, and distribute checks to the Authorized Claimants for their percentage share of the amount in the Net Settlement Fund in accordance with the Plan of Allocation.

## ARGUMENT

A.    **The Court Should Authorize Distribution of the Net Settlement Fund to Authorized Claimants**

As set forth in the Mulholland Affidavit, SCS processed over 900 claims submitted by potential Class members. Mulholland Aff. ¶¶ 4-5 (A13). SCS has prepared detailed ledgers of

Authorized Claimants, Late Claims, and Ineligible Claims, annexed as Exhibits A (A 19), D (A 22), D-1 (A 32), E (A 33) and F (A 34-38) to the Mulholland Affidavit. With respect to Class members who submitted deficient claims, SCS notified the claimant of the nature of the deficiency and provided an opportunity for them to cure such deficiencies. In response to the deficiency notices, 63 claimants perfected previously deficient claims. See Mulholland Affidavit, ¶ 12 (A 14).

Among the 922 claims received, 568 (including the 27 proper, but late claims) were determined to be eligible to receive a payment from the Net Settlement Fund. Mulholland Affidavit, ¶ 13(a) (A 15) and Exhibit D (A 22) thereto. As indicated by the Mulholland Affidavit and Exhibits E (A 33) and F (A 34-38) thereto, there were several reasons why other Proofs of Claim were determined to be ineligible. As indicated by paragraph 13(b) (A 15) to the Mulholland Affidavit and Exhibit E (A 33) annexed thereto, SCS has recommended that 23 claims be rejected because, after being given an opportunity to cure the defect, the claimants were still unable to submit adequate documentation that they were Members of the Class or entitled to recover. The remaining 331 claims that SCS has recommended rejecting fall into a limited number of categories, as documented in paragraph 13(c) (A 16) of the Mulholland Affidavit and Exhibit F (A 34-38) annexed thereto. These claimants were sent rejection notices because they had suffered no loss, had not purchased during the class period, had submitted duplicate claims, provided insufficient documentation, had not purchased their shares, or had submitted a claim based on the purchase of a stock other than Citadel. The Mulholland Affidavit reports that SCS sent rejection notices to these claimants advising them that SCS had determined that their claim was being rejected, and the reason. The Mulholland Affidavit further reports that not one of the rejected claimants has sought to contest the determination of the Claims

Administrator that their claim was ineligible. (Mulholland Affidavit, paragraphs 13(b) (A 15) and (c) (A 16).)

Accordingly, the Court should authorize final distribution of the Net Settlement Fund to the 568 Authorized Claimants identified by SCS in Exhibit D (A 22-31) to the Mulholland Affidavit.

**B.     The Court Should Authorize the Inclusion of
        Class Members Who Submitted Late Claims**

As discussed above, 27 claimants submitted otherwise proper claims postmarked after January 4, 2007. Mulholland Affidavit, ¶ 13(a) (A 15). These 27 claims are included in the 568 Authorized Claimants listed in Exhibit D (A 22-31) to the Mulholland Affidavit as claimants whose claims should be approved and who should receive distributions. It is respectfully submitted that these "late" claims should be deemed timely and included as Authorized Claimants.

Inclusion of this relatively modest number of claims will not delay or impede the administration of the Settlement. The Recognized Losses of all 568 Authorized Claimants total $17,780,492.68. Mulholland Affidavit ¶ 13(a) (A 15). The Recognized Losses of the 27 late claims represent only $1,096,747 of that total (A 32). Moreover, SCS has determined that nearly all of the late claimants received the Notice and Proof of Claim Form late from their brokers and were, therefore, not at fault. Thus, it would be inequitable to penalize them for their broker's delay. Plaintiffs submit that including these claimants is fair and reasonable and that exclusion is unnecessary and potentially unfair.

Until the Net Settlement Funds are actually distributed, this Court retains broad and inherent equitable powers to include claims that were submitted late. *See Zients v. LaMorte*, 459 F.2d 628, 630-31 (2d Cir. 1972) ("[W]here, as here, all the equities are on the side of the

claimants, the fund has not been distributed and the administration of the fund would be insignificantly hampered by allowing these few late claims, appellants should be permitted to participate in the fund."); *see also In re "Agent Orange" Product Liability Litig.*, 821 F.2d 139, 145 (2d Cir. 1987). The primary purpose of these equitable powers is to balance the goals of expedient settlement distribution and the consideration due to late-arriving class members. *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 321 (3d Cir. 2001). Accordingly, the Court should deem those 27 claims that are otherwise eligible but were submitted after the January 4, 2007 postmark deadline to be timely, as recommended by the Claims Administrator, and allow those 27 claimants to participate in the Settlement.

**C.     The Court Should Authorize Payment of SCS's
         Fees and Expenses for Claims Administration**

SCS has annexed a detailed invoice to the Mulholland Affidavit as Exhibit G (A 39) showing that SCS is owed $103,894.01 in fees and expenses, including $5,000 in fees and expenses to calculate, print and mail checks to the Authorized Claimants and handle returned checks and reconciliations of the Net Settlement Fund account. Mulholland Affidavit ¶ 15 (A 16) and Exhibit G (A 39) thereto. To date, SCS has not been paid for such fees and expenses. Lead Counsel submit that these fees and expenses are reasonable, and accordingly request that the Court authorize payment to SCS out of the Settlement Fund in the total amount of $103,894.01.

**D.     The Court Should Authorize the Donation of
         Any Residual, Unclaimed Balance of the Net
         Settlement Fund to a Not-for-Profit Organization**

Following distribution to Authorized Claimants (and including the 27 late claimants), the Net Settlement Fund may contain a residual balance of unclaimed funds because of uncashed, undeliverable, or returned checks. "Most class actions result in some unclaimed funds." *Six (6)*

*Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990); *see In re Motorsports Merchandise Antitrust Litig.*, 160 F. Supp. 2d 1392, 1393-94 (N.D. Ga. 2001) ("It is not uncommon in . . . class actions to have funds remaining after payment of all identifiable claims."). Indeed, "[d]espite best efforts[,] . . . it remains virtually certain—especially when large classes are involved—that not all class members will share in an aggregate class recovery. This situation may or may nor result in a residue remaining after individual claim distribution." *Jones v. National Distillers*, 56 F. Supp. 2d 355, 356 (S.D.N.Y. 1999) (quoting Alba Conte and Herbert B. Newberg, *Newberg on Class Actions*, § 10:14, at 10-36 (3d ed. 1992). In such circumstances, "[f]ederal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds." *Six (6) Mexican Workers*, 904 F.2d at 1307 (finding that district court properly considered *cy pres* distribution for the limited purpose of distributing the unclaimed funds); *Motorsports Merchandise*, 160 F. Supp. 2d at 1393 ("Where no legal claim to settlement benefits exists, a court can exercise its equitable powers to distribute the remaining funds.").

"Where distribution of class funds to class members is infeasible, courts often use cy pres principles to determine an appropriate use for the funds." *Jones*, 56 F. Supp. 2d at 357. "Distribution of that fund residue outside the class thus is entirely proper, so long as the choice of recipient is appropriate under the circumstances." *Id.*

> "A frequent use of class funds not accruing to the class members is a donation to a public or otherwise non-profit entity combating harms similar to those that injured the class members. Such a donation may serve the cy pres principle of indirectly benefiting all class members." *Id.* at 358.

*See also Powell v. Georgia-Pacific Corp.*, 843 F. Supp. 491, 499 (W.D. Ark. 1994).

The recovery by Citadel investors would not have been possible without the availability of the federal courts and the class action procedure. Lead Counsel believe that it would be

appropriate to donate the undistributable funds to an organization such as ILEP that fosters research and scholarly discussions among academics, the judiciary, securities regulators and practitioners regarding the use of the class action device, the enforcement of securities, anti-trust and civil rights regulations, the appropriate balance in class action litigation and the availability and direction of the federal courts in these and other areas in which the class action device plays such an important role.

Accordingly, Lead Counsel respectfully submit that the best use of a residual, unclaimed balance in the Net Settlement Fund, if any, would be to donate it to ILEP, the Institute for Law and Economic Policy. In the interest of full disclosure, Lead Counsel note that Edward Labaton, a partner of Labaton Sucharow LLP, serves as the president of ILEP. Neither Mr. Labaton nor anyone else associated with Labaton Sucharow receives any compensation from ILEP.

ILEP, based in Philadelphia, is a private, nonsectarian, not-for-profit, Internal Revenue Code §501(c)(3) tax deductible corporation. ILEP is a public policy research and educational foundation—a "think tank"—established to preserve, study and enhance access to the civil justice system by investors, consumers and others. ILEP's goal is to engage persons with expertise and practical experience to formulate policy positions on issues involving the administration of civil justice within the American legal system. These issues include existing legal protections of investors and consumers and protection of the public interest in maintaining a safe environment. ILEP has especially focused on issues of government regulation, preservation of competition, and free and fair markets.

Since December 1996, ILEP has held symposia presenting a balanced academic discussion of issues of concern to consumers, investors and public advocates. Some of these issues were raised in this action. ILEP's symposia have resulted in many research papers and

law review articles and have been held in conjunction with major American law schools, including Boalt Hall School of Law of the University of California, Columbia Law School, Duke University School of Law, the University of Arizona College of Law, the University of Pennsylvania Law School, Vanderbilt University School of Law, and Washington University Law School. A list of symposia sponsored by ILEP in conjunction with an impressive list of co-sponsors is annexed to the accompanying declaration of Joseph Sternberg (A 1-7) as Exhibit A (A 9-10).

Among the papers presented at ILEP symposia was a law review article cited by the Court of Appeals for the Ninth Circuit in its landmark ruling in the *Silicon Graphics* securities class action. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 975 (9th Cir. 1999) (citing Richard H. Walker and J. Gordon Seymour, *Recent Judicial and Legislative Developments Affecting the Private Securities Fraud Class Action*, 40 Ariz. L. Rev. 1003 (1998)). Judge Weinstein of the Eastern District of New York cited an ILEP-based law review article in an opinion in the Philip Morris tobacco litigation. *See Simon v. Philip Morris Inc.*, 200 F.R.D. 21, 43 (E.D.N.Y. 2001) (citing Paul V. Niemeyer, *Remarks to the Institute for Law and Economic Policy*, 39 Ariz. L. Rev. 719, 719 (1997).

Recent ILEP symposia have included a May 5, 2006 symposium, co-sponsored by Columbia Law School, in honor of former Securities and Exchange Commissioner Harvey Goldschmid. The symposium, titled "A Ten Year Retrospective on Litigation Reform," featured speeches and remarks by former SEC Chairman Arthur Levitt and Joel Seligman, President of the University of Rochester and former Dean of the Washington University School of Law. The 2007 ILEP symposium focused on the evolving role of institutional investors in corporate governance and litigation and was co-sponsored by Vanderbilt University School of Law.

Lead Counsel submit that ILEP is a worthy and appropriate recipient of any residual, unclaimed balance of the Net Settlement Fund in this action.

### Conclusion

For the foregoing reasons, Lead Plaintiff respectfully requests that this Court issue the proposed order directing that the Claims Administrator's fees and expenses, including the costs of the distribution, be paid out of the Settlement Fund; approving and authorizing the distribution of the Net Settlement Fund to the Authorized Claimants in accordance with the recommendation of the Claims Administrator; and authorizing the donation of any residual, unclaimed balance of the Net Settlement Fund.

Dated: New York, New York
December 18, 2007

Respectfully submitted,

LABATON SUCHAROW LLP

By: _____
(Joseph Sternberg)

140 Broadway
New York, N.Y. 10005
Telephone: (212) 907-0700
Telecopier: (212) 818-0477

MURRAY, FRANK & SAILER LLP
Marvin L. Frank
Lawrence D. McCabe
Gregory B. Linkh
275 Madison Ave, Suite 801
New York, New York 10016
Telephone: (212) 682-1818
Telecopier: (212) 682-1892

Class Counsel

BARON & BUDD, P.C.
Lance Pool
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
Telephone: (214) 521-3605
Telecopier: (214) 520-1181

Liaison Class Counsel

686308 v1
[12/18/2007 14:52]